***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Gillen, and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Gillen, with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act. *Page 2 
2. An employment relationship existed between Plaintiff and Defendant-Employer on or about July 27, 2009.
3. The carrier liable on the risk is correctly captioned above.
4. Plaintiff alleges to have sustained an injury to her back, which Defendants accepted as compensable by filing an Industrial Commission Form 60 dated August 11, 2009.
5. Plaintiff's average weekly wage is $913.29, resulting in a weekly workers' compensation rate of $608.89.
 ***********
The following were entered into evidence before the Deputy Commissioner as:
 STIPULATED EXHIBITS a. The Pretrial Agreement, marked as stipulated exhibit 1.
 b. A collection of documents including the Industrial Commission Forms and filings in this matter, discovery information, and Plaintiff's medical records, collectively paginated 1-486 and marked as stipulated exhibit 2.
 *********** EVIDENTIARY MATTERS
On July 19, 2010, Deputy Commissioner Gillen filed an Order disapproving Defendants' June 15, 2010 Form 24 Application, which is hereby incorporated by reference.
 *********** ISSUES PRESENTED
1. Whether Plaintiff has unjustifiably refused suitable employment pursuant to N.C. Gen. Stat. § 97-32 and the applicable case law? *Page 3 
2. What indemnity compensation and/or medical treatment is Plaintiff entitled to as a result of the admittedly compensable July 27, 2009 workplace injury?
 ***********
Based upon all the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff, who is a registered nurse, worked for Defendant-Employer as a Hospice supervisor. In this position Plaintiff was required to complete tasks such as lifting up to 50 pounds, manipulating bedridden patients by rolling them, and generally caring for patients without assistance. Plaintiff had a preexisting fibromyalgia condition that required an ongoing Percocet prescription.
2. On July 27, 2009 Plaintiff suffered an admittedly compensable injury by accident arising out of and in the course and scope of her employment with Defendant-Employer when she injured her back while moving boxes and furniture. Defendants accepted Plaintiff's claim as compensable using an Industrial Commission Form 60 dated August 11, 2009. The Form 60 also indicates that Plaintiff's disability began on July 27, 2009, and that temporary total disability compensation had commenced.
3. Subsequent to the injury, Defendant-Employer offered Plaintiff a modified position doing chart audits. This position involved no patient care responsibilities. Plaintiff attempted to return to work in this position multiple times but was unable to complete the tasks required due to pain. In the chart auditor position, Plaintiff was required to examine files in a detailed manner. Due to her pain, Plaintiff was not able to maintain a sufficient level of mental concentration to perform this task adequately. *Page 4 
4. Plaintiff began treatment at the Center for Scoliosis Spinal Surgery in October, 2009. The medical record from this visit indicates a diagnosis of "Lumbar degenerative disc disease" and "L4-5 and L5-S1 disc protrusion." Dr. Scot E. Reeg, a doctor at that practice, testified that it was reasonable to assume that Plaintiff's back condition was aggravated by her work injury from the previous year. Dr. Reeg further testified that Plaintiff would risk additional back problems if she were to return to work in a capacity beyond a sedentary level. Dr. Reeg opined that it would not have been beneficial for Plaintiff to attempt to return to work. Dr. Reeg explained that based on his impression, Plaintiff's condition "was fraught with problems" and that returning to work would "only kick that can down the road just a little bit further."
5. Dr. Max Kasselt evaluated Plaintiff on April 14, 2010. Dr. Kasselt's medical record from this visit reflects a diagnosis of "Degenerative disc disease, L4-L5, L5-S1 with bulging discs and facet arthritis Lumbago and right sciatica without neurological findings." Dr. Kasselt testified by deposition subsequent to the hearing in this matter before the Deputy Commissioner and essentially deferred to Dr. Reeg's opinions regarding Plaintiff.
6. Dr. Angelo Tellis with Crystal Coast Pain Management Center evaluated Plaintiff on May 6, 2010. In the medical record from this visit, Dr. Tellis indicated a diagnosis including "Low Back Pain, facet syndrome vs discogenic,' "L4/5 Degenerative Disc Disease," "L5/S1 Degenerative Disc Disease," and "Chronic LBP and proximal RLE pain related to work injury 7/27/09." On this date, Dr. Tellis did not believe Plaintiff had reached MMI at this time as Plaintiff needed further medical intervention. Dr. Tellis noted that an impairment rating can be provided once Plaintiff has completed treatment and work restrictions can be determined based upon the results from a functional capacity evaluation. Dr. Tellis indicated that he performed an "Oswestry Assessment," and that this test indicated that Plaintiff suffered "severe disability." *Page 5 
7. Dr. Gregory Gridley, a clinical psychologist, testified that Plaintiff had no diagnosable clinical presentation and that he would not render an orthopedic diagnosis or anything out of his purview.
8. Vocational rehabilitation counselor Ronald C. Alford conducted a vocational assessment in Plaintiff's case on June 3, 2010. Mr. Alford testified that his labor market survey found no sedentary positions appropriate for Plaintiff.
9. In order to accommodate Plaintiff's medical limitations and physical restrictions, Defendant-Employer offered Plaintiff a modified position subsequent to her injury that was only available to Plaintiff. This position, which was specifically modified for Plaintiff, is not a job that is readily available in the competitive employment market and therefore, is not suitable. This position was specially modified for Plaintiff in that it is not a position that existed prior to Plaintiff's injury and was a sedentary position tailored to Plaintiff's physical limitations. Accordingly, the wages earned by Plaintiff while attempting to work in this position were not indicative of any wage-earning capacity.
10. The credible medical and vocational evidence of record shows that, as a result of Plaintiff's July 27, 2009 injury, taking into account Plaintiff's physical and vocational limitations, Plaintiff has been totally disabled and unable to earn any wages in any competitive employment from July 28, 2009, and continuing.
11. Defendants are entitled to a credit for all wages and temporary partial disability compensation paid to Plaintiff subsequent to July 27, 2009.
12. The Full Commission finds based upon the greater weight of the evidence that Dr. Tellis should provide and direct Plaintiff's medical care.
 *********** *Page 6 
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On July 27, 2009, Plaintiff sustained an admittedly compensable injury to her back as a result of a specific traumatic incident of the work assigned that arose out of and in the course of her employment with Defendant-Employer during a judiciably cognizable time period. N.C. Gen. Stat. § 97-2(6); Fish v. Steelcase,Inc., 116 N.C. App. 703, 707, 449 S.E.2d 233, 237 (1994),cert. denied, 339 N.C. 737, 454 S.E.2d 650 (1995). This compensable injury caused Plaintiff's back condition or materially accelerated or aggravated a pre-existing condition. N.C. Gen. Stat. § 97-2(6); Brown v. Family Dollar Distrib.Ctr., 129 N.C. App. 361, 364, 499 S.E.2d 197, 199 (1998).
2. Defendants accepted this injury as compensable using a Form 60 dated August 11, 2009. The Form 60 filed in this matter does not create a presumption of continuing disability. The burden of proving compensable disability remains with Plaintiff. Sims v.Charmes/Arby's Roast Beef,142 N.C. App. 154, 542 S.E.2d 277 (2001). In this case, Plaintiff has produced sufficient evidence to prove that Plaintiff's admittedly compensable July 27, 2009 work injury caused subsequent ongoing disability. N.C. Gen. Stat. § 97-29; Russell v. LowesProd. Distrib., 108 N.C. App. 762 (1993).
3. In order to meet the burden of proving continuing disability, Plaintiff must prove that she was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by Plaintiff's injury. Hilliard v. Apex Cabinet Co.,305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that she is *Page 7 
physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that she is capable of some work, but that she has, after a reasonable effort, been unsuccessful in her efforts to obtain employment; (3) evidence that she is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that she has obtained other employment at wages less than her pre-injury wages.Russell v. Lowes Prod. Distrib.,108 N.C. App. 762, 425 S.E.2d 454 (1993). In the present case, Plaintiff has presented sufficient medical evidence that, taking into account Plaintiff's physical and vocational limitations, she is incapable of work in any competitive employment.
4. Regarding Plaintiff's attempts to return to work and her disability subsequent to the admittedly compensable injury, an employer may rebut the presumption of continuing disability through evidence "that suitable jobs are available to the employee and that the employee is capable of getting one, taking into account the employee's physical and vocational limitations." Franklin v.Broyhill Furniture Industries, 123 N.C. App. 200, 206, cert.denied, 344 N.C. 629 (1996). "[M]ere proof of a return to work is insufficient to rebut the . . . presumption," because "capacity to earn is the benchmark test of disability." Kisiah v. W.R. KisiahPlumbing, 124 N.C. App. 72, 81 (1996), disc. reviewdenied, 345 N.C. 343 (1997). A "suitable" job is defined as one that the Plaintiff is capable of performing considering age, education, physical limitations, vocational skills, and experience.Burwell v. Winn-Dixie Raleigh, 114 N.C. App. 69 (1994). The job assigned Plaintiff by Defendant-Employer subsequent to her injury, as specifically modified for her, was not proven to be readily available in the competitive labor market. N.C. Gen. Stat. § 97-32; Saums v. Raleigh Community Hospital,346 NC 760 (1997); Peoples v. Cone Mills Corp.,316 N.C. 426 (1986). Given the foregoing, the *Page 8 
work assigned by Defendant-Employer subsequent to her injury did not constitute "suitable employment" sufficient to establish capacity to earn competitive wages. Id.
5. Furthermore, Plaintiff was justified in refusing the chart auditing job in that the tasks required were outside of her physical limitations given her ongoing pain. N.C. Gen. Stat. § 97-32;Oliver v. Lane Co., 143 N.C. App. 167 (2001).
6. Given the credible medical and vocational evidence of record, as a result of Plaintiff's admittedly compensable injury of July 27, 2009, Plaintiff was temporarily totally disabled and is entitled to temporary total disability compensation at the rate of $608.89 per week for the period from July 28, 2009 and continuing until further order of the Commission. N.C. Gen. Stat. § 97-29;Russell v. Lowes Prod. Distribution, 108 N.C. App. 762 (1993).
7. Subject to the provisions of N.C. Gen. Stat. § 97-25.1, Plaintiff is entitled to have Defendants provide all medical treatment, incurred or to be incurred, necessitated by the admittedly compensable injury, when the medical bills have been approved according to established Industrial Commission procedures. N.C. Gen. Stat. §§ 97-25; 97-25.1. This includes an FCE to be conducted within 45 days of this Opinion and Award. The results of that evaluation will address whether Plaintiff is currently at MMI and what are Plaintiff's appropriate restrictions. The job description for the position being offered to Plaintiff by Defendants shall be reviewed by Dr. Tellis to determine suitability given Plaintiff's restrictions per the FCE. If the job is determined to be suitable, Plaintiff shall immediately undertake a trial return to work.
8. Regarding Plaintiff's medical treatment, the North Carolina Workers' Compensation Act gives the Industrial Commission the power to "order such further [medical] treatments as may in the discretion of the Commission be necessary," with the cost to be paid by Defendants. Furthermore, the Industrial Commission may "at any time . . . order a change in *Page 9 
treatment and designate other treatment suggested by the injured employee. . . ." N.C. Gen. Stat. § 97-25. Dr. Tellis shall be Plaintiff's authorized treating physician for all pain related conditions and shall initially conduct an evaluation of all current medications that Plaintiff may be taking for any pain related condition. In addition, Dr. Tellis will be the only physician authorized to write prescriptions for pain related medications.
9. Defendants are entitled to a credit for all wages and temporary partial disability compensation paid to Plaintiff subsequent to July 27, 2009. N.C. Gen. Stat. § 97-42; Moretz v.Richards Assocs., Inc., 316 N.C. 539, 342 S.E.2d 844 (1986).
 ***********
Based upon the foregoing Findings of Facts and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Given the credible medical and vocational evidence of record, and Plaintiff's admittedly compensable injury of July 27, 2009, Defendants shall pay Plaintiff, subject to the attorney's fee approved below and the credits owed Defendants for the wages and temporary partial disability compensation paid, temporary total disability compensation at a rate of $608.89 per week from July 28, 2009 and continuing until further order of the Commission. To the extent that amounts have accrued, they shall be paid to Plaintiff in a lump sum.
2. Defendants shall pay all of Plaintiff's medical expenses incurred or to be incurred as a result of the admittedly compensable accident, subject to the provisions of N.C. Gen. Stat. § 97-25.1, when the medical bills have been approved according to established Industrial Commission procedures. *Page 10 
3. Dr. Tellis shall be Plaintiff's authorized treating physician for all pain related conditions and shall initially conduct an evaluation of all current medications that Plaintiff may be taking for any pain related condition. In addition, Dr. Tellis will be the only physician authorized to write prescriptions for pain related medications.
4. An FCE shall be conducted within 45 days of this Opinion and Award. The results of that evaluation will address whether Plaintiff is currently at MMI and Plaintiff's appropriate restrictions. The job description for the position being offered to Plaintiff by Defendants shall be reviewed by Dr. Tellis to determine suitability given restrictions per the FCE. If the job is determined to be suitable, Plaintiff shall immediately undertake a trial return to work.
5. A reasonable attorney fee of twenty-five percent of the compensation due Plaintiff under paragraph 1 of this Award is approved for Plaintiff's counsel and shall be paid as follows: 25% of any lump sum due Plaintiff shall be deducted and paid directly to Plaintiff's counsel.
6. Defendants shall pay the costs.
This the 27th day of July, 2011.
 S/______________
 STACI T. MEYER
 COMMISSIONER
CONCURRING:
S/_________________ LINDA CHEATHAM COMMISSIONER *Page 11 
S/_____________________ BERNADINE BALLANCE COMMISSIONER *Page 1